May it please the court. George Poisson on behalf of Mr. Vogel. This case presents a defendant's literal nightmare where although the defendant doesn't testify and there's no basis for the government to impeach his testimony with his prior conduct, everything comes out in his background in terms of his criminal history, prior misconduct under the guise of 404B or inextricably intertwined. Your Honor, Mr. Vogel was denied a fair trial by the introduction of all these items that really were not inextricably intertwined or properly brought under 404B. Specifically, the first part is that the government made a motion Let's suppose, counsel, that you had a case involving a bank robbery and the government reached a plea deal with the guy who had actually gone in the bank and held up the bank, and the case we're talking about in this hypothetical is the car is the driver of the getaway car. And the guy who robbed the bank is asked by the government, why did you hire this guy? I hired this guy because he told me he had been in prison four different times and was experienced at violent crime and experienced at driving getaway cars. Would that be admissible? Well, it depends who's on trial, Your Honor. The getaway driver and the bank robbery in the hypothetical case I just described. And, Your Honor, that would not be – for the trial of the getaway driver, the fact that he had been in prison four times and was going to be the getaway driver and the bank robber trusted him is not relevant to the issues for the getaway driver. Here's the distinction in the case. I mean, if a bank robber hires this guy, in my hypothetical, because he has a resume. It's not the kind of resume you and I might look to, but it's the kind of resume that might impress someone that wants to make sure that the guy will stay out there and drive the car no matter what happens. And isn't that the evidence of your client being disbarred and spending time in prison with drug smugglers? Wasn't that his resume? Well, that was what the government introduced, ultimately introduced. They introduced my client's prior conviction for cocaine, the fact that he had been in four years in prison, and the fact that he had been disbarred as an attorney. That was the case. This case started, as I understand it, because a drug smuggler was looking for someone that would help him buy a house with laundered money, right? That was the government's theory of the case, yes. But the issue is, is that he wasn't looking for the realtor of the year. He was looking for someone who would help him commit a crime, right? And if Mr. Abelman's, the government's witness's, intent was ever at issue, perhaps that question would have been proper. Why did you hire this person? But the issue was never Mr. Abelman's intent, he or his motive. It was conceded that he was a long-time drug smuggler. Here's what Abelman said on the stand. Well, he told me he had been in prison with many drug dealers, and many people you know were criminals, and for most people that wouldn't be a reference. But in my situation, the fact that he told me he went to prison so that he would not have to testify against people that he'd been involved in was a positive reference. That's his testimony. That is his testimony, and that's why I allege it's improper. Because the government's position was that Abelman's motive, his intent, was an issue. It wasn't an issue. Defense counsel never once asked Mr. Abelman, well, why did you ask Mr. Vogel to help you? Now, that would have opened the door to Mr. Abelman testifying why. But that wasn't the issue. The issue, I mean, it wasn't an issue at time of trial why Mr. Abelman did what he did. The question was whether he was telling the truth. And Mr. Vogel's defense was, hey, I mean, I, you know, his intent was, he went to trial. His intent was an issue. So how did this evidence regarding Mr. Vogel's prior convictions, his for cocaine, had nothing to do with money laundering, his four years in Federal prison that had nothing to do with Mr. Abelman, and his disbarment as an attorney. Now, how did that have anything to do with Mr. Vogel's intent? And if the government had tried to say, well, this is relevant to his intent, obviously it wasn't. It wasn't relevant to his intent because it had nothing to do with Mr. Abelman. And it wasn't inextricably intertwined because it wasn't dealing with Mr. Abelman, unlike the McCoy case where the defendants, the issue inextricably intertwined and said, well, because they had a prior background and they had been dealing stuff together. But Mr. Vogel and Mr. Abelman, prior to this money laundering conspiracy, had not been dealing together. So the government so the problem, using the court's hypothetical, is that the, this evidence was indeed relevant for the improper use of showing, you know, Mr. Abelman and why he dealt with Mr. Vogel. But that's not an issue the jury had to decide. The jury never had to decide why Mr. Abelman would be doing what he did. It was just whether Mr. Why Mr. Vogel, his intent, what he did what he did. And the evidence that he, and we can't think of any more prejudicial evidence. In fact, as it came in, it even exceeded the government's proffer, because not only could they use the conviction, use the conviction for cocaine trafficking and this barment, but they also got to use how many years Mr. Vogel had been in prison. I mean, here his, all his background comes out under the guise of showing why Mr. Abelman did what he did. Well, no, we conceded that, you know, he money laundered, and that's why, you know, he wanted to money, launder some money. But that wasn't an issue, that wasn't the issue at time of trial. So now we have this part, but then we have, you know, the other, more evidence of before the conspiracy, Mr. Abelman dealt with Mr. Vogel to cook the books, essentially, to create false travel vouchers. Now, arguably, that's closer to inextricably intertwined, but I contend that it really isn't. In fact, it's just more propensity evidence and bad conduct used to taint Mr. Vogel's defense that he did not know that this was laundered money. It really didn't go to the ultimate issue of his intent. It just go, you know, it was just propensity evidence. But, your counsel, in creating all these false invoices, it was for the purpose of concealing drug money, isn't that right? They had this jewelry business, which really was a front, and they had to figure out things that would disguise the fact that they were laundering the drug money. So it seems to me that it's more than intertwined, it's part of what's going on. Well, your honor, I would, yes, I mean, as it came out, Abelman testified that he actually, that he was trying to launder some of his drug money by this. Although it wasn't part of the conspiracy, it wasn't charged as part of the conspiracy. And the government's proffer regarding the relevancy of it was different as the Abelman's testimony, so I would concede it's closer to inextricably intertwined. But in light of the other evidence that already came in, it's just more prejudicial propensity evidence. And that's a similar, I have a similar contention regarding the tax return evidence. The tax returns, the government offers the failure of Mr. Vogel to pay his taxes from 1988 to 1996, the years when he died. But it's not used to show that he had some wealth. It's used to show that, it's used to show knowledge, but it has no bearing on knowledge. I mean, the fact that he may not have paid taxes for these years does not prove that he knew that the funds that were going through his accounts was drug money. And that was the government's proof, and that's what they had to prove, an element of the case, and that's what Mr. Vogel's defense was. His defense- Do you deal with the United States against Taylor? Your Honor, that case is distinguishable because it talks about wealth, and a person must know there's criminal conduct because he has, he's hiding his wealth. But this case is, it takes another step forward, another step, because in this case, it's, it doesn't show that Mr. Vogel knew that this was hashish money or drug money. I mean, the fact that he might have known, he might have known that this was not his money, didn't want to put taxes on it, or he might not want to know the source, doesn't establish the fact that he specifically knew it was money from Mr. Abelman's drug business. Because if- Taylor, Taylor does hold that the failure to file tax returns can be probative of the use of illegal as opposed to legal income, right? But then, but then- Can we start, can we start with, have I accurately characterized this? Yes, yes, yes, Your Honor, I can see that. But the question is, is that now does it show specifically that Mr. Vogel, that Mr. Vogel knew that the money obtained by Mr. Abelman was, was drug money? And, and it doesn't, the government doesn't need just to show that it was illegal money, that it was drug money, because that's what they charge. It was specific, that's a specific element they have to prove in this particular case. And it does, unlike in the case of Taylor, this case doesn't show that Mr. Vogel knew that that money, by failing to pay the taxes on this money, that he knew it was drug money. Now, finally, the, the issue of the, the statement by a deceased witness, Randall Harper, his, his, here's a testimony to Mr. Hereford that, you know, give me back the check. If anyone gets, gets in the wrong hands, he could be in trouble. Now, here's the, the government offers this as a co-conspirator statement. Defense objected, saying it's not in furtherance of the conspiracy. And, indeed, it's not in furtherance of the conspiracy. Even if we assume that Randall Harper is a conspirator, first of all, he's talking to a non-conspirator. It was never considered, it was never, it was never argued that Mr. Hereford was a co-conspirator. And this is, this is pure hearsay. I mean, even if the, if the government could have, if the government would have limited, well, give me back the check, perhaps the argument would have been made, well, you know, maybe it's not prejudicial, maybe that's, you know, a, a co-conspirator statement. But in this case, it says, I'll be in trouble if, you know, if, if this check gets in the wrong hands. This is pure hearsay. It doesn't further the objects of the conspiracy. It's just chattered to Mr. Hereford, and, and Mr. Vogel can never cross-examine this person. He can't exercise his rights under Hughes v. Crawford. Mr. Harper is dead. I mean, you know, so he, you know, they don't, they can't produce the hearsay declarant, and they, they prejudice, they prejudice Mr. Vogel's defense by introducing this hearsay statement. It makes it look like that there's dangerous people involved in this, this conspiracy. It's prejudicial to Mr. Vogel's defense, that he didn't know that this money was, was drug money. Now, individually, perhaps the errors would not have been prejudicial, but cumulatively and I contend, you know, in this argument to the first, the first error is so great that that warrants reversal. That's prejudicial error. But all these errors together denied Mr. Vogel a fair trial. And they prejudiced his defense. They brought, they allowed the government to use all his background for, under the guise of inextricably intertwined and 404B, and to show that Mr. Vogel had a criminal propensity, and therefore he must have done this. And propensity evidence is not allowed under any theory of admissibility the government used at the time of this trial. If I could, I'd save my minute and three seconds. We'll hear from the government at this time. Ms. Kelly? Good morning, Your Honors. May it please the Court, Candace Kelly on behalf of the United States. The statements that Mr. Vogel made to Mr. Abelman at the very beginning of this conspiracy were admissible as direct evidence of the conspiracy, because they were probative of three elements that the government had to prove. First, they showed that Vogel intended to become involved in this conspiracy with Abelman. Second, they showed the formation of that conspiracy between Abelman and Vogel. And finally, they showed that Vogel knew that Abelman's wealth was derived from drug trafficking. The statements themselves were that Mr. Vogel had been to prison, that he had been convicted of a drug trafficking crime, that he had gone to prison because he was not willing to testify against the other people that he had committed these crimes with, and that he had been disbarred. By making these statements, Vogel was setting forth his credentials. It was his criminal resume to Abelman, who he was hoping to engage in criminal conduct with. So both from Vogel's perspective, he was setting forth his credentials. And then Abelman testified, as the Court has already quoted Abelman's testimony, that this was a positive reference. He realized through these statements that Vogel was legally trained, he was knowledgeable and experienced in drug trafficking, and he was trustworthy. He would go to prison before he would turn against Mr. Abelman. So the statements that came in were not – first, it didn't matter whether or not the statements were true. And so – and the Court limited and the government limited the use of this testimony to knowledge and state of mind of both Vogel and Abelman. So it was not simply Abelman's state of mind that was at issue. It was the state of minds of both of these players, because the government had to prove an agreement between the two, Abelman and Vogel. And the trial court did not abuse its discretion in admitting this evidence because it conducted a balancing test, and the trial court, Chief Judge Walker, was very aware of the prejudicial nature of any evidence that goes to someone's prior convictions. However, given the probative value of this evidence on the very hard-to-prove elements of knowledge, intent, and agreement that are difficult to prove in any conspiracy case, Chief Judge Walker recognized that high probative value and balanced that with the risk that was minimized by the limiting instruction that the Court gave both at the time of the testimony and at the end of the trial. And then the government supplemented that by, when the government mentioned this evidence in closing argument, reiterated the fact that it doesn't matter whether or not these were Vogel's claims, that he had fabricated this information, or that whether or not it was actually true about his criminal history. The importance of this testimony was that Vogel made the claims, and what were the circumstances under which someone would make such claims unless he knew that he was involved with drug-trafficking money. So the district court properly limited this evidence, and therefore addressed any potential prejudice that could have come from the evidence. And the limiting instruction, the government's use of the testimony, and in addition to the overwhelming evidence of the conspiracy, together were so that error would be harmless in this case, because the evidence in this case was overwhelming. There were bank records that showed convoluted bank transactions where money from Abelman's accounts and accounts in the Middle East that were funded with drug money came eventually to Vogel's own pocket through third-party bank accounts in the United States. And the bank records were not contested. Abelman's testimony was very complete and thorough, and it was corroborated. With those bank records, Abelman's testimony about Vogel selling his services to drug traffickers in Europe, selling information about the state of law enforcement's investigation of those drug traffickers was corroborated with documents, some of which were written in Vogel's own handwriting. So taken as a whole, there was no, even if this were error, it was harmless error. It's kind of ironic that we want to establish that Abelman trusted Vogel because he wouldn't squeal, and here's Abelman squealing. It may have been ironic, Your Honor, but I think that it was clear from Abelman's testimony that when someone who is involved in the criminal world needs to have this kind of a resume before him, before he will trust somebody to engage in further criminal conduct. What did Abelman get? Abelman, excuse me, what was his sentence? Yes. He received 78 months. And Vogel got 100. That's correct. With respect to the false invoices that were created, the arguments are very similar. I think that the big difference between the false invoices and the statements about Vogel's prior criminal history is that the false invoices were not nearly as prejudicial because of the nature of the crimes that he – that the evidence that came in, the facts of this case against Vogel about him selling law enforcement information to drug traffickers around the world, the creation of false invoices was not nearly as prejudicial as the statements about his prior conduct. But – What about the testimony regarding the disbarment? That – again, that was evidence that – Why isn't this, to use the NFL analogy, piling on? Well, I think that the – The NFL player, it's okay, but if 10 people jump on top of the pile right before the whistle, it's called piling on. Why isn't this piling on? The evidence – What does this have to do with his trustworthiness in the criminal world? I think that that goes more to his credentials in terms of being a worthy partner in crime to Abelman than to his trustworthiness. I think that the – if you take the statements – Let's go back to my getaway car analogy, and suppose the guy had – the getaway driver had said, the reason I was in prison was for child molestation, and I don't want to ever go back because they – the other inmates tried to kill me the last time I was in there, and I'm afraid they'll kill me if I go back again. Would that be relevant in my bank robbery situation, hypothetically? I think that it might be relevant, but I think that given the inflammatory nature of the type of conviction, I don't think that it would probably be outweighed by the risk of prejudice. But getting back to the question of the disbarment, I think that – Well, suppose one of his prior robberies was the robbery of a homeless shelter. The – Oh, you see the point? What's – even if you accept the government's theory about résumé, didn't – what relevance is disbarment? I think that the relevance has to do with the fact that Abelman was looking for someone who was not only willing to go to prison at the time of the robbery, but before he would snitch on his co-conspirators, but someone who was smart. Abelman clearly, from his testimony and from the various things that he had engaged in – Well, I guess I'd have no problem in – at all if, you know, the testimony had been, he told me he had been a lawyer or that he had legal training. Correct. Unfortunately, that – that is the testimony that the information that was conveyed by the fact that he was disbarred was that he had legal training. It came in in this form because that's the way Abelman learned from Vogel that he had this legal training. You're telling the – did you try the case? I did. You're telling us you didn't prepare Abelman to testify? I prepared Abelman to testify and – You knew exactly what he was going to say? I – I did not know exactly what he was going to say. You knew he was going to talk about disbarment? Yes. And it would have been just as easy to have him say, I wanted a smart guy and this guy had legal training. Told me he was a lawyer or had been a lawyer. It – it could have come in in that form. The – the pretrial ruling that – Had more sting to it when he said disbarment, didn't it? It was – it was simply the context in which these statements were made to Abelman and it was – and given the pretrial ruling that Chief Judge Walker gave that – that this was all admissible for the effect that it had on Abelman and Vogel's state of mind in admitting these – these prior – the – what had happened to him, I think that the – that that is also important, that not only is it the effect that it had on Abelman, but it was Vogel making the claims in that way, as opposed to Vogel simply saying, I am a lawyer. He – he admitted or fabricated, because whether or not these claims were true or not is irrelevant, as the jury was instructed, was significant both to show Vogel's state of mind in – in disclosing all of this information or fabricating this information to Abelman to try and bring him into his trust and for the effect that it had on Abelman. I think we understand your argument on this point. I don't see any other questions from my colleagues. Thank you for your argument here this morning. We'll hear any rebuttal you have, counsel. The – the process – the government makes the distinction saying, well, some stuff might be too inflammatory, but I would contend that the – the – all the materials that are introduced in this time of trial, the – the four years in prison, the felony conviction for drug trafficking and cocaine, and the disbarment is extremely prejudicial and extremely inflammatory. And the issue that – that somehow Abelman needed, you know, needed all this information to trust people. I mean, the court has before on excerpts of record number one, page one, the – the indictment against – the second superseding indictment against Mr. Abelman. Mr. Abelman was involved in many attempts. He – he not only smuggled drugs, he also, you know, laundered money. Not allegedly through Mr. Vogel only, but he had other people and other accounts that he – he submitted money to. So this is the – the context of Mr. Abelman. To – to contend that somehow that the – that Mr. Abelman's intent was relevant in this particular case really puts the 404B on its head. If now we're going to have a witness, we're going to be able to show a witness's intent, a government witness's intent, and we're going to introduce in order to show that intent all the prior acts of defendant on the time of trial, then there's no limitation to the evidence we can – we can introduce. Opposing counsel tries to justify this on the basis that it was also showing your client's intent to try to get involved in – in the illegal activity. Is there any strength in that argument? Well, there really – it's really – there is no strength to that argument. My – this is an admission to my client. Somehow he – he said all this in order to – his intent. What – what is the proof to his intent, that he wanted to deal – that he wanted to get a deal with Mr. Abelman? I mean, if the fact – if he said, look, I want to deal with you, that could have been limited to that. Does he have to – does the government have to be able to prove that he was convicted of a, you know, drug offense that's unrelated, he's been disbarred, and all these other things? It's gone too far on that. And it is – it is – it has made it to tentative evidence rather than 404B, in – to show an intent. Okay. Thank you very much for your argument, counsel. Thank both sides for their argument. The case just argued will be submitted for decision, and the Court will stand in recess for the day. Thank you. All rise. This Court stands in recess for the day. This Court stands in recess for the day. This Court stands in recess for the day.
judges: Lay, B. Fletcher, Hawkins